**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

UNITED STATES OF AMERICAN and the STATE OF MONTANA ex rel. MEDEQUITY CORPORATION,

Plaintiffs/Relator,

vs.

BENEFIS HEALTH SYSTEM, INC., LOGAN HEALTH n/k/a/ MTWY HEALTH, FORREST EHLINGER, and ADAM PLACE,

Defendants.

**CV-23-65-GF-BMM**

**ORDER ON MOTIONS TO DISMISS**

Plaintiff Relator Medequity Corporation ("Medequity") sued Defendants Benefis Health System, Inc. and Forrest Ehlinger (collectively "Benefis") and Defendant Logan Health and Adam Place (collectively "Logan") on behalf of itself and the United States and the State of Montana on October 24, 2023. (Doc. 1.) Medequity amended the complaint on May 29, 2026. (Doc. 57.) Benefis filed a motion to dismiss Medequity's amended complaint. (Doc. 84.) Logan joined Benefis's motion. (Doc. 87.) Benefis filed a counterclaim. (Doc. 98.) Medequity filed a motion to dismiss the amended counterclaim. (Doc. 106.) The Court held a hearing on September 8, 2026. (Doc. 125.)

## BACKGROUND

Several possible sources exist for reimbursement when a medical provider seeks to recover the cost of patient care. Third-party liability ("TPL") entities and

government healthcare programs represent the two sources of recovery at issue. Third-party liability reimbursements come from private entities responsible for paying for the liability of a third party who caused an injury. These reimbursements include automobile insurance, slip-and-fall insurance, or other accident-related liability companies. (Doc. 57 ¶ 6.) A medical provider can pursue reimbursement from the applicable TPL insurer when a TPL claim covers a patient's injury.

A medical provider can pursue reimbursement for eligible patients from government healthcare programs, including Medicaid, Medicare, Tricare, and the VA when unable to recover the cost of treatment from a TPL entity. (*Id.* ¶ 22.) These programs require that the claimant first seek payment from liable TPL insurers whenever such coverage exists. (*Id.*) Claimants can recover from Government Healthcare Programs even when TPL coverage remains available in some limited circumstances, such as unreasonable delay in reimbursement. (*Id.* ¶ 25.) The claimant remains responsible for accurately reporting the existence of TPL coverage to the government and reimbursing the government within the statutory time frame if it eventually receives private payment. (*Id.*) These rules collectively comprise the secondary payer rules. (*Id.* ¶ 78.)

Medequity contracted with Defendants as a third-party liability claims administrator. (*Id.* ¶ 6.) The contracts provided Medequity with the exclusive right

to pursue reimbursement for all TPL claims for both hospital systems. (*Id.*) Defendants assigned a case to Medequity to pursue payment from the TPL entity when Defendants identified a patient whose treatment may be covered by a TPL claim. (*Id.*) Medequity alleges that it had read-only access to billing and records systems for Defendants. (*Id.* ¶ 7.) Medequity alleges that identification and assignment of the claims remained the responsibility of Defendants. (*Id.*) Benefis and Logan both terminated their contracts with Medequity prematurely in January 2023 and August 2023, respectively. (*Id.* ¶ 277, 291.)

Medequity now alleges that Defendants committed thousands of violations of the secondary payer rules. (*Id.* ¶ 235.) Medequity alleges that Defendants possessed the requisite knowledge of these violations to constitute fraud under the federal False Claims Act ("FCA") and Montana False Claims Act ("MFCA"). (*Id.*) Medequity alleges that Defendants frequently would violate the contract in the following ways: (1) fail to assign TPL eligible claims to Medequity, instead opting to seek reimbursement only through a government program; (2) assign a claim to Medequity, but simultaneously pursue payment from the government; and (3) delay or refuse to reimburse the government funds after TPL claims successfully had been collected. (*Id.* ¶ 75-234.) Medequity alleges that Defendants knew of these violations beginning in 2021 and lasting until Defendants terminated their relationship with Medequity in 2023. (*Id.* ¶ 235-268.)

Medequity's communications with Defendants regarding these violations also serve as the basis for its retaliation claim. (*Id.* ¶ 327.) Medequity alleges that it engaged in escalating communications with Defendants regarding the alleged violations between 2021-2023. (*Id.* ¶ 236-254.) Medequity alleges that these warnings prompted the premature termination of Medequity's contracts.

Finally, Medequity and Benefis both allege breach of contract. Medequity alleges that Defendants breached their contractual right to collect exclusively on all TPL claims by failing to refer eligible claims to Medequity thereby depriving Medequity of the fees associated with TPL recovery. (*Id.* ¶ 272.) Medequity also claims that Defendants violated their contractual obligations by discontinuing access to their billing systems after termination, harming Medequity's ability to collect existing claims. (*Id.* ¶ 283, 292-293.). Defendants do not seek to dismiss these contracts claims. (Doc. 85 at 4.)

Defendant Benefis filed a counterclaim alleging that Medequity breached its contract. (Doc. 98.) Benefis alleges that Medequity contracted to provide an "end-to-end" service, including identification of accounts eligible for TPL collection. (*Id.* ¶ 4). Benefis alleges that Medequity failed to perform these services. Benefis additionally alleges that Medequity failed to provide agreed upon post-termination transition information. (*Id.*) And Benefis claims that the contract obligated

Medequity to indemnify Benefis for financial loss associated with the *Blaine* class action lawsuit. (*Id.* ¶ 68-72.)

Defendants move to dismiss the FCA and MTFCA claims in Medequity's amended complaint (Doc. 84.) Defendants' motion does not include Medequity's breach of contract claims. Medequity moves to dismiss Benefis's breach of contract amended counterclaim (Doc. 106.)

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure ("FRCP") requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). FRCP 12(b)(6) allows for dismissal for "failure to state a claim upon which relief can be granted . . ." when a Plaintiff fails to meet this requirement. Fed. R. Civ. P. 12(b)(6).

A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face" to survive a 12(b)(6) motion. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007). A claim proves plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). The plausibility standard does not require probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.* at 678. A court must "take[] as true and construe[] in the light most favorable to plaintiffs" all factual allegations set forth in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted)).

Rule 9(b) of the Federal Rules of Civil Procedure requires that the pleading in cases alleging fraud meet a heightened standard where the circumstances constituting fraud must be stated with particularity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). The pleading must identify "'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). The heightened pleading standard applies to allegations of fraud made under the FCA. *See e.g. Cafasso*, 637 F.3d at 1054; *Ebeid*, 616 F.3d at 998.

## DISCUSSION

### I. Motion to dismiss the amended complaint

Defendant Benefis moves the Court to dismiss Count I-VIII of the amended complaint (Doc. 57) for failure to state a claim. (Doc. 84.) Benefis argues that Medequity has failed to meet the heightened pleading standard required by Rule 9(b). (Doc. 85.) The provisions of the FCA and MTFCA appear substantially identical such that they can be analyzed simultaneously.

**A. Presentment of False Claims.**

Section 3726(a)(1)(A) of the FCA subjects to liability any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3726(a)(1)(A). The MTFCA contains an identical provision. Mont. Code Ann. § 17-8-403(1)(a). Medequity sufficiently has pled allegations of fraud under this provision to meet the 9(b) standard.

Medequity alleges that "Defendants submitted or caused the submission of claims . . . for medical services when Defendants had knowledge that such services were subject to primary coverage by liability, no-fault, or medical-payments insurance." (Doc. 57 ¶ 297.) Medequity identifies six specific patients that it alleges Defendants improperly billed to government healthcare services despite TPL eligibility. (Doc. 57.) Medequity describes these example cases in detail. (*Id.*) Medequity also alleges that Defendants engaged in these practices on a systemic level, and that thousands of other such claims may exist. (Doc 57 ¶ 216.) These allegations sufficiently identify the "who, what, when, where, and how of the misconduct charged," as well as its fraudulent nature. *Cafasso,* 637 F.3d at 1055. Medequity's presentment of false claims allegations survives the motion to dismiss. (Doc. 84.)

**B. False Records and Statements.**

Section 3726(a)(1)(B) of the FCA subjects to liability any person who "knowingly makes, uses, or cause to be more or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3726(a)(1)(B). The MTFCA contains an identical provision. Mont. Code Ann. § 17-8-403(1)(b). Medequity sufficiently has pled under this provision to meet the 9(b) standard.

Medequity alleges that Defendants knowingly created and submitted billing forms that misrepresented information. (Doc. 57 ¶ 82-95.) Medequity alleges that Defendants failed to report accidents that caused the patient's injury on billing forms for government healthcare programs. (*Id.*) The circumstances of these accidents made the claim TPL-eligible. (*Id.*) Medequity alleges that government healthcare programs rely on these forms to make eligibility determinations. (*Id.* ¶ 217-225.) Medequity asserts that these omissions make the records material to the fraudulent claim. (*Id.*) Medequity's amended complaint alleges the creation of these false records occurred both as part of a broad practice and in individual instances of misrepresentation. (*Id.* ¶ 116.)

Medequity adequately has identified the parties responsible for the alleged misrepresentations. The Court also finds that Medequity identified with sufficient specificity both the fraudulent records and the circumstances of their creation. Medequity's false records and statements claims survive the motion to dismiss. (Doc. 84.)

**C. Reverse False Claims.**

Section 3726(a)(1)(G) of the FCA, known as the "reverse false claims" provision, subjects to liability any person who:

> "knowingly makes, uses, or cause to made or used, a false record of statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."

31 U.S.C. § 3726(a)(1)(G). This provision has been subject to conflicting interpretation by both the parties and the courts. The disagreement revolves around the question of whether a reverse false claim can exist independently of an initial false claim made by a false record or statement.

Before the 2009 amendments to the FCA, the "reverse false claims" provision, like the rest of the FCA, first required that the initial claim be considered fraudulent under the FCA. The 2009 amendments added the language "knowingly conceals or knowingly and improperly avoids or decreases" to this provision. Many courts interpret this change as covering money that may not result directly from a fraudulent claim, but money the claimant knows is legally owed to the government and yet continues to retain. *United States ex rel. Thomas v. Touchstone Behav. Health,* 774 F. Supp. 3d 1179, 1192 n.7 (D. Ariz. 2025) (collecting authorities). The MTFCA contains an identical provision. Mont. Code Ann. § 17-8-403(1)(g).

The Ninth Circuit maintains that "'[t]he 'reverse false claims' provision does not eliminate or supplant the FCA's false claim requirement . . ..'" *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 336 (9th Cir. 2017) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1056 (9th Cir. 2011)). The Court acknowledges that *Serco* constitutes binding precedent that requires any reverse false claims to be supported by an initial false claim. The Court also notes, however, the growing weight of precedent favoring the alternative interpretation. This precedent includes cases from other district courts within the Ninth Circuit that eliminates the requirement of an initial false claim. *See Touchstone Behav. Health,* 774 F. Supp. 3d at 1192 n.7; *Dep't of Emp. Training & Rehab. ex rel. Chagolla v. Lyft, Inc.,* No. 3:23-CV-00442-ART-CLB, 2024 WL 4349314 at 4* (D. Nev. Sept. 30, 2024); *United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1056 (N.D. Cal. 2020).

Regardless of the interpretation of this provision, Medequity has pled sufficiently for these claims to survive at the motion to dismiss stage. Medequity alleges at least one occasion where Benefis received payments from false claims and retained those payments after having received TPL reimbursement. (Doc. 56 ¶ 101-118.) Medequity alleges at least one occasion where Logan received payment from false claims and then retained those payments after having received notification that those payments had been improper. (Doc. 56 ¶ 184-205.) These

allegations plausibly allege a reverse false claims action. Medequity's reverse false claims claims survive the motion to dismiss. (Doc. 84.)

**D. Retaliation.**

Section 3730(h) of the FCA prohibits retaliation against "[a]ny employee, contractor, or agent" who took lawful acts to stop violations of the FCA. 31 U.S.C. § 3730(h). The MTFCA has a substantially similar provision. Mont. Code Ann. § 17-8-412. Medequity cites these statutes and alleges that their actions to correct illegal billing practices by Defendants resulted in the premature termination of their contract. (Doc. 57 ¶ 326-337.)

Medequity alleges an escalating series of warnings from Medequity to Defendants regarding their billing practices. (*Id.* ¶ 236-254.) Medequity alleges that they sent an email to Benefis in March 2022 titled, "'high alert, Benefis actions could result in lawsuit[.]'" (*Id.* ¶ 251.) Medequity alleges that Benefis requested that Medequity retract that statement in late 2022. (*Id.* ¶ 276.) Medequity declined. (*Id.*) Benefis terminated Medequity's contract in early 2023. (*Id.* ¶ 277.) Medequity alleges a similar pattern of communications with Logan. (*Id.* ¶ 256-259.) Medequity alleges that Logan also provided Medequity notice of termination without identifying any breach of contract shortly after Benefis had terminated its relationship with Medequity. (*Id.* ¶ 286-295.) Medequity further notes that Logan and Benefis share legal counsel. (*Id.* ¶ 291.)

Medequity alleges that its termination arose from retaliation for "investigating [Defendants] false billing practices, identifying violations of secondary payer requirements, reporting those violations to the Defendant Hospital Systems, disclosing its findings to the federal and Montana governments, and filing this action." (*Id.* ¶ 327.) Medequity's allegations identify specific protected actions, people and entities responsible, a plausible timeline, and actions they believe led to the retaliation by Defendants. The Court finds those allegations plausible and sufficiently specific to meet the higher 9(b) standard. Medequity's retaliation claims survive the motion to dismiss. (Doc. 84.)

## II. Motion to dismiss the amended counterclaim

Medequity seeks to dismiss Benefis's amended counterclaim. Benefis's counterclaim involves a contracts dispute. The plausibility pleading standard of Rule 8(a) applies. Fed. R. Civ. P. 8(a). Benefis has met that standard. Benefis points to specific provisions of the parties' Master Services Agreement ("MSA") (Doc. 56-1) and Statement of Work ("SOW") (Doc. 56-2 (Ex Parte)) that it alleges Medequity breached. Benefis alleges specific, plausible facts for breach of the MSA and SOW contract documents. (Doc. 98.) And Benefis identifies an indemnification clause and alleges indemnifiable costs stemming from the *Blaine* litigation. (*Id.* ¶ 68-72.) Drawing all inferences in favor of the movant, the Court

finds that Benefis has pled sufficiently to survive the motion to dismiss. (Doc. 106.)

## CONCLUSION

The amended complaint and the amended counterclaim identify cognizable claims and plead facts sufficient to meet their respective standards. Both pleadings survive the motions to dismiss.

## ORDER

Accordingly, **IT IS SO ORDERED**

- Defendants' Motion to Dismiss the Amended Complaint (Doc. 84.) is **DENIED.**
- Plaintiff's Motion to Dismiss the Amended Counterclaims (Doc. 106.) is **DENIED.**

DATED this 23nd day of September 2026.

Brian Morris, Chief District Judge
United States District Court